Donovan WALKER and Nancy Walker, Plaintiffs,

v.

Dwain JACKSON, Timothy Horan, Richard McNeill, Richard McCormack, Matthew Wosny, Michael Golden, Timothy Hancock, Steven Dodd, and James Galvin, Defendants.

Civil Action No. 12–10267–JLT.

United States District Court, D. Massachusetts.

July 8, 2013.

Garrett J. Lee, Denzil D. McKenzie, McKenzie & Associates, P.C., Boston, MA, for Plaintiffs.

Michelle K. Hinkley, Lisa Skehill Maki, City Of Boston Law Department, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

### I. *Introduction*

Plaintiffs Donovan and Nancy Walker initiated this suit against members of the Boston Police Department for alleged police misconduct. They claim that officers conducted an illegal search of their home and used excessive force against Mr. Walker. Before the court are eight separate motions to dismiss the Walkers' *Third Amended Complaint* [# 60]. For the reasons below, the motions are ALLOWED IN PART and DENIED IN PART.

### II. *Background*

#### A. *Factual Background* [1]

Early in the morning on February 15, 2011, the Boston Police Department ("BPD") received several 911 calls from a man who identified himself as "Demetrius" and claimed to reside at 4 Burton Avenue in Roxbury, Massachusetts. During the first call, he indicated that he "needed a lot of police to report" because "someone is dead" and an unidentified individual had a gun. Later he said that "someone is in the hallway, under the porch, in the back yard, and on the first floor or upstairs" and that "there's someone on the first floor, the second floor and third floor and the roof." During his third call, a State Police dispatcher notified the BPD dispatcher that "this is the fifth time he has called in. He's trying to tell me there's one person with a gun and somehow they're in the basement, the first floor, the second floor, and the third floor and the roof all at once." The BPD dispatcher asked the caller for a description of the gunman. He responded that actually there were "twenty people all in black," they had guns, and they intended to kill someone.[2]

The dispatchers traced the calls to a Sylvester McDuffie at 4 Burton Street in Brighton, Massachusetts, who the BPD knew had made prior false reports. The BPD dispatched units to both the Brighton and Roxbury addresses. They found nothing of concern at McDuffie's address.[3]

The BPD arrived at the Roxbury address, where the Walkers resided, around 6:30 a.m.[4] The BPD, including Defendant Officer Dwain Jackson, had some familiarity with Mr. Walker through his work for

---

**1.** The court presents the facts, drawn from the *Third Amended Complaint* [# 60] [hereinafter Compl.], in the light most favorable to the Walkers.

**2.** Compl. ¶¶ 17–19.

**3.** Compl. ¶ 20.

**4.** Compl. ¶ 21.

the Black Ministerial Alliance. Mr. Walker frequently contacted and collaborated with the BPD, elected officials, clergy members, and other municipal employees.[5]

Upon arrival, the BPD surrounded the Walkers' residence, a first-floor, two-and-a-half bedroom apartment in a multifamily structure. They knocked on the door and a window. Mr. Walker opened the door to Defendant Officers Jackson, Richard McCormack, Richard McNeill, and Matthew Wosny standing in the doorway. Defendant Officers Michael Golden, Timothy Hancock, and Steven Dodd, along with Defendant Sergeant Detective Timothy Horan, accompanied them. Officer McCormack informed Mr. Walker that they had received a 911 report of a dead body and gunman in the apartment. Mr. Walker denied the report.[6]

The officers insisted that they needed to search the apartment to confirm Mr. Walker's statement. Although the officers did not produce a warrant, Mr. Walker believed he had to allow the search. The officers agreed, at Mr. Walker's request, to limit the search to two officers, Officers McCormack and McNeill.[7]

Mrs. Walker accompanied Officers McCormack and McNeill through the apartment while Mr. Walker waited outside. Neither officer seemed concerned for his own or Mrs. Walker's safety, and neither officer drew his gun. Mrs. Walker had to remind them to check behind the closed shower curtain when they searched the bathroom. The officers found neither a body nor a shooter.[8]

Meanwhile, Mr. Walker blocked further entry to the apartment.[9] After Officers McCormack and McNeill had completed their search, Officer Jackson, waiting outside with the others, became agitated and impatient. He told Mr. Walker that Mr. Walker could not stop him from entering the apartment, and he stepped forward to confront him. Officer Jackson then thrust his forearm into Mr. Walker's chest, pushing him backward into a wall. He threw Mr. Walker to the ground, where Mr. Walker landed on a bicycle and injured his back. While the other BPD members watched, Officer Jackson stepped over Mr. Walker, kicked him in the side of the head, and entered the apartment.[10] The remaining BPD members waiting outside joined Officers Jackson, McCormack, and McNeill in the apartment and proceeded to search the areas already searched and cleared by Officers McCormack and McNeill.[11]

While lying on the ground, Mr. Walker yelled for the BPD members to leave immediately.[12] They ignored him and continued to search the apartment for approximately forty-five minutes.[13] At some point during this search, Defendant Sergeant James Galvin arrived and assisted the other BPD members. None of the BPD members drew their weapons or seemed concerned for their safety during the search.[14]

5. Compl. ¶ 15.

6. Compl. ¶¶ 21–23.

7. Compl. ¶¶ 24–26.

8. Compl. ¶ 27.

9. Compl. ¶ 26.

10. Compl. ¶¶ 28–30.

11. Compl. ¶¶ 31–32.

12. Compl. ¶ 32.

13. Compl. ¶ 36.

14. Compl. ¶¶ 32–33.

Mrs. Walker tried to help her injured husband, but Sergeant Horan blocked her path and confined her to the living room. Several officers indicated their disbelief that Mr. Walker was injured, and two pulled on his arms.[15] Mr. Walker continued to yell for them to leave, and he managed to call Boston Police Superintendent Daniel Linskey. When the BPD members heard Mr. Walker speaking with Superintendent Linskey, they immediately vacated the apartment. An ambulance then transported Mr. Walker to the hospital at approximately 7:30 a.m.[16]

That same evening, Sergeant Horan returned to the Walkers' residence with his supervisor. He admitted that Officer Jackson had acted inappropriately but said that "it would take a long time" for the Walkers to see any recovery if they tried to sue the BPD.[17]

Two days later, McDuffie was arrested for making false 911 calls and disturbing the peace.[18]

### B. Procedural Background

The Walkers filed their initial complaint on February 10, 2012. They then filed amended complaints on February 13, 2012, and June 15, 2012. Each defendant filed a motion to dismiss the second amended complaint. The Walkers subsequently moved to file a third amended complaint, which this court allowed. The *Third Amended Complaint* [# 60] brings claims for: 1) unreasonable search under 42 U.S.C. § 1983, against Defendant Jackson; 2) aiding and abetting an unreasonable search under 42 U.S.C. § 1983, against Defendants Horan, Wosny, Golden, Hancock, Dodd, McCormack, and McNeill; 3) use of excessive force under 42 U.S.C. § 1983, against Defendant Jackson; 4) aiding and abetting excessive use of force under 42 U.S.C. § 1983, against Defendants Horan, Wosny, Golden, Hancock, and Dodd; 5) supervisory liability under 42 U.S.C. § 1983, against Defendant Horan; 6) violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11, against Defendant Jackson; 7) assault and battery, against Defendant Jackson; 8) civil trespass, against all defendants; 9) false imprisonment, against Defendant Horan; 10) invasion of privacy, against Defendant Jackson; and 11) emotional distress, against Defendant Jackson.

The defendants then filed eight separate motions to dismiss. Officer Jackson moves to dismiss Counts I (unreasonable search), VIII (civil trespass), and X (invasion of privacy). Sergeant Horan moves to dismiss Counts II (aiding and abetting unreasonable search), IV (aiding and abetting excessive use of force), V (supervisory liability), and VIII (civil trespass). Defendants McCormack and McNeill move to dismiss Counts II (aiding and abetting unreasonable search) and VIII (civil trespass). Defendants Wosny, Hancock, Dodd, and Golden move to dismiss Counts II (aiding and abetting unreasonable search), IV (aiding and abetting excessive use of force), and VIII (civil trespass). Defendant Galvin moves to dismiss Count VIII (civil trespass).

### III. Discussion

#### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include factual allegations that demonstrate a

---

**15.** Compl. ¶¶ 34–35.

**16.** Compl. ¶ 36.

**17.** Compl. ¶ 37.

**18.** Compl. ¶ 38.

plausible claim for relief.[19] The "court must 'take all factual allegations as true and draw all reasonable inferences in favor of the plaintiff.'"[20] Nevertheless, the court need not accept the plaintiff's legal conclusions, and the plaintiff must provide more than "labels and conclusions or a formulaic recitation of the elements of a cause of action."[21]

### B. Defendants' Motions to Dismiss

The court addresses each challenged count in turn.

#### i. Count I: Violation of 42 U.S.C. § 1983, Unreasonable Search

Officer Jackson argues that he conducted a legal search pursuant to the emergency aid exception to the warrant requirement. He also raises qualified immunity.

■ "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."[22] But the warrant requirement has exceptions, including the emergency aid exception, which allows law enforcement officers to "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from immi-

nent injury."[23] An officer must have a reasonable basis, approximating probable cause, to believe an emergency exists and to associate that emergency with the place to be searched.[24] A reviewing court must consider the totality of circumstances facing the officer, including the "need for an on-the-spot judgment based on incomplete information and sometimes ambiguous facts bearing upon the potential for serious consequences."[25]

■ The 911 calls reporting a gunman and dead body may have justified the initial search of the Walkers' apartment by Officers McCormack and McNeill. But the complaint, read in the light most favorable to the Walkers, alleges that Officer Jackson conducted a second, separate search of the apartment. This search allegedly occurred after Officers McCormack and McNeill had completed their search and failed to find any evidence corroborating the 911 calls. Accepting as true that Officers McCormack and McNeill completed their search before Officer Jackson conducted his search, Officer Jackson had no reasonable basis to believe an emergency existed inside the Walkers' apartment.[26] Count I adequately states a claim for relief.

---

**19.** *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**20.** *Pettengill v. Curtis*, 584 F.Supp.2d 348, 362 (D.Mass.2008) (quoting *Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 96 (1st Cir. 2007) (emphasis omitted)).

**21.** *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations and quotation marks omitted).

**22.** *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (internal citations and quotation marks omitted); *see United States v. Beaudoin*, 362 F.3d 60, 65 (1st Cir.2004).

**23.** *Brigham City*, 547 U.S. at 403, 126 S.Ct. 1943 (citing *Mincey v. Arizona*, 437 U.S. 385,

392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)); *see Beaudoin*, 362 F.3d at 66.

**24.** *Beaudoin*, 362 F.3d at 66.

**25.** *United States v. Infante*, 701 F.3d 386, 393 (1st Cir.2012) (quoting *United States v. Martins*, 413 F.3d 139, 147 (1st Cir.2005)).

**26.** *See Beaudoin*, 362 F.3d at 69–70 (upholding warrantless search where defendant's suspicious behavior, coupled with anonymous 911 call reporting dead body, provided reasonable basis to believe there was an emergency in motel room); *Fontanez v. City of Worcester*, No. 09–40203–FDS, 2012 WL 2829613, at *5 (D.Mass. July 9, 2012) (denying summary judgment where second search occurred after conclusion of hot pursuit of

 Furthermore, Officer Jackson · is not entitled to qualified immunity.[27] The court has already · determined that the complaint's allegations, taken as true, establish a violation of a constitutional right. And it is well-established, as noted above, that "searches and seizures inside a home without a warrant are presumptively unreasonable," unless an exception applies.[28] According to the complaint, Officer Jackson entered the apartment without a warrant, knowing that his fellow officers had already determined that no emergency existed. The alleged conduct violates clearly established rights, and an objectively reasonable officer would have understood this.[29] The court cannot grant Officer Jackson qualified immunity at this time.

### ii. Count II: Violation of 42 U.S.C. § 1983, Aiding and Abetting Unreasonable Search [30]

The Walkers allege that Defendants Horan, Wosny, Golden, Hancock, Dodd, McCormack, and McNeill violated their constitutional rights by failing to stop Officer Jackson from conducting an unreasonable search. Each of these defendants challenges the Walkers' claim on two grounds. First, they argue that liability cannot attach because they had no reasonable opportunity to intervene to prevent Officer Jackson's conduct. Second, they argue that they have qualified immunity because 'the right at issue was not clearly established at the · time of their alleged violation. Defendants claim that no case, either before the Supreme Court or in the First Circuit, has imposed liability for failure to intervene in an unreasonable residence search.

 Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[31] A court must determine whether an official has qualified immunity "at the earliest possible stage in litigation."[32] The court must consider: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation."[33] The First Circuit has explained that the second question breaks into two parts: (1) "whether the contours of the

suspect, which had justified an initial search); cf. Commonwealth v. Peters, 453 Mass. 818, 905 N.E.2d 1111, 1117 (2009) (finding second protective sweep unreasonable under art. 14 of the Mass. Decl. of Rights where first protective sweep uncovered no evidence of emergency).

27. The court elaborates the qualified immunity standard in the next section.

28. Brigham City, 547 U.S. at 403, 126 S.Ct. 1943 (internal citations and quotation marks omitted); Beaudoin, 362 F.3d at 65.

29. See Sanchez v. Pereira–Castillo, 590 F.3d 31, 52–53 (1st Cir.2009); Fontanez, 2012 WL 2829613, at *7 (citing Maldonado v. Fontanes, 568 F.3d 263, 269–71 (1st Cir.2009)).

30. Although the Walkers label this count "aiding and abetting unreasonable search," the parties all address it as a "failure to intervene" in an unreasonable search. The Walkers' complaint does not seek to hold Defendants Horan, Wosny, Golden, Hancock, Dodd, McCormack, or McNeill directly liable for their participation in the allegedly unconstitutional search.

31. Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

32. Id. at 231–32, 129 S.Ct. 808 (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)).

33. Maldonado, 568 F.3d at 268–69.

constitutional right were sufficiently clear at the time of the alleged conduct;" and (2) "whether, under the particular facts of the case, a reasonable officer would have understood that his behavior violated that clearly established right." [34] In sum, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." [35]

█ The district court has discretion to decide which qualified immunity question to address first.[36] "There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." [37] The Walkers' complaint presents such a case. Without determining whether the alleged constitutional right exists, the court concludes that the defendants are entitled to qualified immunity because that alleged constitutional right was not clearly established at the time of the defendants' conduct.

█ "Liability under section 1983 may be imposed both for action that deprives a plaintiff of a constitutional right and for failure to act, when there is a duty to act, to prevent such a deprivation." [38] "Liability for failure to act has most often been found when the defendant is in a supervisory position over the parties whose conduct plaintiff complains of. Even absent supervisory authority, however, a party's position of responsibility may impose on him a duty to intervene to prevent a constitutional violation." [39]

The Walkers seek to hold the defendants liable for failing to intervene to prevent Officer Jackson's allegedly unreasonable search. But the court has not found any cases holding officers liable in analogous circumstances. Indeed, the cases within the First Circuit deal almost exclusively with the failure to intervene in the use of excessive force.[40] Nevertheless, this court cannot definitively conclude that a claim alleging a failure to intervene in an unreasonable search fails to state a constitutional violation. Other circuits addressing failure to intervene claims have described liability in more general terms. According to the Second Circuit, "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that *any constitutional violation* has been committed by a law enforcement official." [41] But even when courts define lia-

---

34. *Sanchez,* 590 F.3d at 52–53.

35. *Maldonado,* 568 F.3d at 269 (citing *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

36. *Pearson,* 555 U.S. at 236–37, 129 S.Ct. 808; *Maldonado,* 568 F.3d at 269–70.

37. *Pearson,* 555 U.S. at 237, 129 S.Ct. 808.

38. *Clark v. Taylor,* 710 F.2d 4, 9 (1st Cir. 1983).

39. *Id.*

40. *See Wilson v. Town of Mendon,* 294 F.3d 1, 6 (1st Cir.2002) (failure to intervene in use of excessive force); *Davis v. Rennie,* 264 F.3d 86, 98 (1st Cir.2001) (same); *Martinez v. Colon,* 54 F.3d 980, 985 (1st Cir.1995) (same); *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 207 n. 3 (1st Cir.1990) (same); *Santiago v. Keyes,* 890 F.Supp.2d 149, 158 (D.Mass.2012) (failure to intervene in unlawful arrest); *Howe v. Town of N. Andover,* 854 F.Supp.2d 131, 142 (D.Mass.2012) (failure to intervene in use of excessive force); *Farrah ex rel. Estate of Santana v. Gondella,* 725 F.Supp.2d 238, 246 (D.Mass.2010) (same); *Hathaway v. Stone,* 687 F.Supp. 708, 711–12 (D.Mass.1988) (same).

41. *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) (emphasis added) (citations omitted); *accord Boyd v. Benton Cnty.,* 374 F.3d 773, 780 (9th Cir.2004); *Randall v. Prince*

bility more broadly, the facts of the cases tend to involve acts of excessive force or unlawful arrest.[42] It is therefore unclear whether liability may be imposed for failing to intervene in an unreasonable search.

It is plain, however, that the contours of the constitutional right were not sufficiently clear to give the defendants notice that their conduct in this case was unconstitutional. The court has not found any support for the proposition that allowing a fellow officer to enter a residence and participating in the subsequent search constitutes a claim for failure to intervene. Accordingly, the court agrees that the defendants have qualified immunity as to Count II.

### iii. Count IV: Violation of 42 U.S.C. § 1983, Aiding and Abetting Excessive Use of Force

Defendants Horan, Wosny, Hancock, Dodd, and Golden move to dismiss Count IV of the complaint. They argue that they did not have a realistic opportunity to intervene in Officer Jackson's allegedly unlawful conduct and that they have qualified immunity.

 "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfea-

sance."[43] But the officer must have a "realistic opportunity" to intervene.[44] The Walkers have alleged sufficient facts that, if true, could support liability for failure to intervene. According to the complaint, Officer Jackson engaged in a series of discrete steps that amounted to excessive use of force. As alleged, his fellow officers could have intervened at each step to prevent harm to Mr. Walker. The Walkers have adequately pleaded a claim for relief.

 Additionally, it is well settled that an officer may be liable for another officer's excessive use of force.[45] Taking the complaint's allegations as true, Defendants had "fair warning" that their alleged conduct was unconstitutional,[46] and they are not entitled to qualified immunity.

### iv. Count V: Violation of 42 U.S.C. § 1983, Supervisory Liability

The Walkers seek to hold Sergeant Horan liable for failing to prevent his subordinate, Officer Jackson, from violating their constitutional rights. Sergeant Horan argues that the complaint fails to affirmatively link his conduct to the alleged violations and lacks any allegation that he acted with reckless and callous indifference. Sergeant Horan also claims, without providing any reasons, that he has qualified immunity.

George's Cnty., Md., 302 F.3d 188, 203–04 (4th Cir.2002); Hall v. Burke, 12 Fed.Appx. 856, 861 (10th Cir.2001); Chavez v. Ill. State Police, 251 F.3d 612, 652 (7th Cir.2001); James ex rel. James v. Sadler, 909 F.2d 834, 837 (5th Cir.1990). But see Ghandi v. Police Dep't of City of Detroit, 747 F.2d 338, 352 (6th Cir.1984).

**42.** See, e.g., Smith v. Kenny, 678 F.Supp.2d 1093, 1111 (D.N.M.2009) (collecting cases); Bolden v. Vill. of Monticello, 344 F.Supp.2d 407, 421 (S.D.N.Y.2004) (failure to intervene in strip search); Fermaglich v. Indiana, No. IP–01–1859–T/K, 2004 WL 2750262, at *32 (S.D.Ind. Sept. 29, 2004) (collecting cases).

**43.** Davis, 264 F.3d at 98 (quoting Gaudreault, 923 F.2d at 207 n. 3).

**44.** Gaudreault, 923 F.2d at 207 n. 3; see Farrah ex rel. Estate of Santana, 725 F.Supp.2d at 246.

**45.** See Wilson, 294 F.3d at 6; Davis, 264 F.3d at 98; Gaudreault, 923 F.2d at 207 n. 3; Clark v. Taylor, 710 F.2d 4, 9 (1st Cir.1983); Farrah ex rel. Estate of Santana, 725 F.Supp.2d at 246; Hathaway, 687 F.Supp. at 712.

**46.** Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir.2009).

■■■■ The doctrine of *respondeat superior* does not apply to § 1983 claims.[47] Rather, officers may be liable only for their owns acts or omissions.[48] "Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. Absent direct participation, a supervisor may only be held liable where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmatively link[ed] to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence ... amounting to deliberate indifference."[49] The complaint alleges that Sergeant Horan participated directly in Officer Jackson's unconstitutional conduct. This sufficiently states a claim for supervisory liability. The case law addressing supervisory liability is clearly established, and Sergeant Horan has not advanced any argument in support of qualified immunity. He is not entitled to dismissal of Count V.

### v. *Count VIII: Civil Trespass*

All nine defendants seek dismissal of the civil trespass claim. They argue that they entered the apartment legally under the emergency aid exception to the warrant requirement.

■■■■ To establish trespass, a plaintiff must prove "actual possession of the plaintiff, and an illegal entry by the defendant."[50] Whether the defendants entered the Walkers' home legally turns on the reasonableness of their search under the emergency aid exception. This court has already determined that the Walkers have plausibly alleged that the second search of the apartment was unreasonable. As all nine defendants participated in this search, the Walkers have adequately stated a claim for trespass.

### vi. *Count X: Invasion of Privacy*

Officer Jackson seeks to dismiss Count X because the emergency aid exception justified his entry into the Walkers' home.

■■■■ Massachusetts recognizes a statutory right of privacy. "A person shall have a right against unreasonable, substantial or serious interference with his privacy."[51] The statute's proscription includes "unreasonable intrusion upon a person's right to seclusion."[52] The intrusion must be both unreasonable and substantial or serious.[53] Whether the intrusion or in-

**47.** *Gaudreault*, 923 F.2d at 209.

**48.** *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 47 (1st Cir.2012); *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 502 (1st Cir.2011); *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir.1989).

**49.** *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 14 (1st Cir.2005) (alteration in original) (internal citations and quotation marks omitted); *see Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1379–80 (1st Cir.1995); *Petricca v. City of Gardner*, 429 F.Supp.2d 216, 221–22 (D.Mass. 2006); *see also Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998); *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir.1997).

**50.** *New Eng. Box Co. v. C & R Const. Co.*, 313 Mass. 696, 49 N.E.2d 121, 128 (1943).

**51.** Mass. Gen. Laws. ch. 214, § 1B.

**52.** *Amato v. Dist. Attorney for Cape & Islands Dist.*, 80 Mass.App.Ct. 230, 952 N.E.2d 400, 409 (2011); *see Ayash v. Dana–Farber Cancer Inst.*, 443 Mass. 367, 822 N.E.2d 667, 699 n. 16 (2005); *Ellis v. Safety Ins. Co.*, 41 Mass. App.Ct. 630, 672 N.E.2d 979, 984 (1996).

**53.** *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 567 N.E.2d

terference is unreasonable and substantial or serious is ordinarily a question of fact.[54]

 Jackson argues that the Walkers have failed to allege an unreasonable invasion of privacy. But his conclusion rests on his determination that he "was entirely justified in entering Plaintiffs' residence because of the emergency aid exception to the warrant requirement."[55] This court has already concluded that the complaint sufficiently alleges that Jackson was not justified in entering under the emergency aid exception. Thus, he is not entitled to dismissal of this claim.

## IV. *Conclusion*

For the foregoing reasons, the defendants' motions to dismiss are ALLOWED IN PART and DENIED IN PART. Count II is dismissed. All other counts remain. AN ORDER HAS ISSUED.

## ORDER

For the reasons stated in the accompanying memorandum, this court hereby orders that:

1. Defendant Dodd's *Motion to Dismiss* [# 63] is ALLOWED IN PART D and DENIED IN PART. The motion is ALLOWED as to Count II and DENIED as to all other challenged counts.

2. Defendant Galvin's *Motion to Dismiss* [# 65] is DENIED.

3. Defendant Golden's *Motion to Dismiss* [# 67] is ALLOWED IN PART and DENIED IN PART. The motion is ALLOWED as to Count II and DENIED as to all other challenged counts.

4. Defendant Hancock's *Motion to Dismiss* [# 69] is ALLOWED IN PART and DENIED IN PART. The motion is ALLOWED as to Count II and DENIED as to all other challenged counts.

5. Defendant Horan's *Partial Motion to Dismiss* [# 71] is ALLOWED IN PART and DENIED IN PART. The motion is ALLOWED as to Count II and DENIED as to all other challenged counts.

6. Defendant Jackson's *Partial Motion to Dismiss* [# 73] is DENIED.

7. Defendants McNeill's and McCormack's *Motion to Dismiss* [# 75] is ALLOWED IN PART and DENIED IN PART. The motion is ALLOWED as to Count II and DENIED as to Count VIII.

8. Defendant Wosny's *Motion to Dismiss* [# 77] is ALLOWED IN PART and DENIED IN PART. The motion is ALLOWED as to Count II and DENIED as to all other challenged counts.

IT IS SO ORDERED.

912, 914 (1991); *see French v. United Parcel Serv., Inc.*, 2 F.Supp.2d 128, 131 (D.Mass. 1998).

**54.** *See Tedeschi v. Reardon*, 5 F.Supp.2d 40, 46 (D.Mass.1998); *Ellis*, 672 N.E.2d at 984– 85 ("Whether the conduct complained of in the plaintiffs' affidavits is unreasonable, as well as either serious or substantial, is a matter to be resolved by the trier of fact.").

**55.** Def. Jackson's Mem. Supp. Partial Mot. to Dismiss 10 [# 74].