JANE T. POLAY & another[1] *vs.* JOSEPH S. McMAHON.

Middlesex. February 6, 2014. - June 13, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Actionable Tort. Privacy. Emotional Distress. "Anti-SLAPP" Statute. Practice, Civil,* Attorney's fees, Motion to dismiss. *Words,* "Incurred."

In a civil action, a Superior Court judge erred in granting the defendant's motion to dismiss the plaintiffs' claim of invasion of privacy, where the plaintiffs' allegation that the defendant installed cameras at his home to conduct continuous surveillance of the interior of the plaintiffs' home in order to harass them made out a plausible claim of an unreasonable and substantial or serious intrusion on their privacy. [382-385]

In a civil action, a Superior Court judge did not err in granting the defendant's motion to dismiss the plaintiffs' claim of intentional infliction of emotional distress, where the plaintiffs failed to allege sufficiently extreme and outrageous conduct, in that the plaintiffs could not rely on the defendant's petitioning conduct (i.e., the alleged filing of false police reports and harassment prevention petitions), and neither the allegation of a single verbal attack on the plaintiffs nor the allegation of the defendant's constant video surveillance of their home rose to the level of extreme and outrageous behavior; and where the plaintiffs failed to allege severe emotional distress. [385-388]

A Superior Court judge did not abuse his discretion in determining an award of costs and attorney's fees after allowing the defendant's special motion to dismiss under the "anti-SLAPP" statute, G. L. c. 231, § 59H, even though the defendant's liability insurer paid for his defense, where nothing in the word "incurred" in the statute precluded fee shifting to a third party acting on the defendant's behalf; and where such fee-shifting promoted the statute's purposes of protecting petitioning activity, promoting quick resolution of anti-SLAPP litigation, and protecting individuals from bearing the cost of defending against such litigation; further, given this court's conclusion reinstating one of the plaintiffs' claims that had been dismissed by the judge, remand was required so that the judge could consider whether the fee award should be reduced. [388-390]

CIVIL ACTION commenced in the Superior Court Department on October 26, 2011.

A motion to dismiss and a special motion to dismiss were heard by *Joseph M. Walker, III,* J.

---

[1] William Morse.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Phillip M. Eliopoulos (Angelique M. Eliopoulos* with him) for the plaintiffs.

*Richard M. Moynihan* for the defendant.

*Alex G. Philipson,* amicus curiae, submitted a brief.

DUFFLY, J. The genesis of this case is an escalating series of disputes between neighbors who live across the street from each other in Lowell. The plaintiffs, Jane T. Polay and William Morse, brought suit against the defendant, Joseph S. McMahon, alleging (1) abuse of process, (2) malicious prosecution, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, and (5) invasion of privacy. McMahon filed a motion to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and a special motion to dismiss pursuant to the "anti-SLAPP" statute, G. L. c. 231, § 59H. A judge of the Superior Court allowed the motion to dismiss as to all claims; he also allowed the special motion to dismiss with respect to the abuse of process and malicious prosecution claims, but denied the special motion as to the other three claims. Having partially succeeded on his special motion to dismiss, McMahon moved for costs and attorney's fees pursuant to G. L. c. 231, § 59H, and the judge granted the motion. The plaintiffs appealed, challenging only the dismissal of their invasion of privacy and intentional infliction of emotional distress claims, and the award of attorney's fees. We reverse the dismissal of the invasion of privacy claim, remand the issue of attorney's fees in light of our decision, and otherwise affirm.[2]

*Background.* The plaintiffs' verified complaint contains the following allegations. Around April, 2008, McMahon and other neighbors entered into a common plan to harass the plaintiffs. On April 4, McMahon met with certain identified neighbors to discuss taking concerted action against the plaintiffs. After the meeting, McMahon filed what the plaintiffs allege was a false police report averring that Morse was stalking him.

In December, 2009, McMahon filed another false police report, in which he alleged that Morse had parked his car in such a

---

[2]We acknowledge the amicus brief submitted by Alex G. Philipson.

way as to prevent McMahon from pulling out of his driveway. Upon arrival of the police, McMahon began verbally attacking the plaintiffs, and officers ordered McMahon back inside his house. McMahon also filed "countless" other false reports against the plaintiffs, including one in which he alleged that Polay committed an assault and battery against McMahon's son by attempting to push the son off his bicycle.

On or about August 13, 2010, in reliance on these false police reports, McMahon sought and was granted a harassment prevention order against the plaintiffs. McMahon thereafter filed several criminal complaints against the plaintiffs for alleged violations of the harassment prevention order, each of which was dismissed. A judge of the District Court subsequently vacated the harassment prevention order after a hearing, concluding that the conduct alleged in support of the initial complaint did not rise to the level of harassment.

Sometime around January 27, 2011, McMahon installed several video cameras in his house, which were pointed at the plaintiffs' property. On May 30, 2011, McMahon installed an additional camera, also directed at the plaintiffs' property. As alleged by the plaintiffs, these cameras record the plaintiffs' house on a continuous basis, and enable McMahon to see into the windows of the plaintiffs' home.

The complaint alleges that McMahon undertook all of these actions against the plaintiffs in order to cause them distress and drive them out of the neighborhood; that McMahon's conduct did cause the plaintiffs "extreme discomfort and distress"; and that "the emotional distress suffered by the [p]laintiffs was severe and of such a nature that no reasonable person could be expected to endure it."[3]

---

[3]McMahon's special motion to dismiss included a copy of a similar complaint that the plaintiffs had filed against different neighbors in the United States District Court for the District of Massachusetts, the judge's memorandum and order dismissing that complaint, the docket of a criminal case involving Polay, the police reports concerning McMahon's complaints to police regarding the plaintiffs, and the harassment prevention orders that had issued against the plaintiffs on McMahon's behalf. Because these items represent matters of public record or documents on which the plaintiffs relied in framing their complaint, the judge properly could consider them in reviewing the motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), without

*Discussion.* 1. *Motion to dismiss.* We review the allowance of a motion to dismiss de novo. *Galiastro* v. *Mortgage Elec. Registration Sys., Inc.*, 467 Mass. 160, 164 (2014). In so doing, "[w]e accept as true the facts alleged in the plaintiffs' complaint as well as any favorable inferences that reasonably can be drawn from them." *Id.* However, "[w]e do not regard as 'true' legal conclusions cast in the form of factual allegations." *Leavitt* v. *Brockton Hosp., Inc.*, 454 Mass. 37, 39 n.6 (2009), citing *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 478 (2000). To survive a motion to dismiss, the factual allegations must " 'plausibly suggest [and] (not merely [be] consistent with)' an entitlement to relief." *Galiastro* v. *Mortgage Elec. Registration Sys., Inc.*, supra at 164-165, quoting *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008).

a. *Invasion of privacy.* The plaintiffs contend that they have alleged sufficient facts to support a claim of invasion of their right of privacy under G. L. c. 214, § 1B.[4] "To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious." *Nelson* v. *Salem State College*, 446 Mass. 525, 536 (2006). See *Schlesinger* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 517-518 (1991) (*Schlesinger*). Most of our jurisprudence under that statute has involved public disclosure of private facts, but a plaintiff also may support a claim of invasion of privacy by showing that a defendant has intruded unreasonably upon the plaintiff's "solitude" or "seclusion." See *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 382 n.16 (2005); *Schlesinger, supra* at 517 & n.4, 519-521; *Amato* v. *District Attorney for the Cape & Islands Dist.*, 80 Mass. App. Ct. 230, 240 (2011). "The right which the plaintiffs claim was infringed upon is their right to be left alone." *Ellis* v. *Safety Ins. Co.*, 41 Mass. App. Ct. 630, 637 (1996) (*Ellis*). See *Schlesinger, supra* at 517.

converting that motion into one for summary judgment. See *Galiastro* v. *Mortgage Elec. Registration Sys., Inc.*, 467 Mass. 160, 165 n.11 (2014); *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 631 n.14 (2008), quoting *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 (2000).

[4]General Laws c. 214, § 1B, provides: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

Generally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact. See *Ellis, supra* at 638; *Walker* v. *Jackson,* 952 F. Supp. 2d 343, 353-354 (D. Mass. 2013). "[T]he Legislature appears to have framed the statute in broad terms so that the courts can develop the law thereunder on a case-by-case basis, by balancing relevant factors . . . and by considering prevailing societal values and the ability to enter orders which are practical and capable of reasonable enforcement." *Schlesinger, supra* at 519. Factors that we have considered in assessing whether there has been an intrusion that is unreasonable, as well as substantial or serious, include the location of the intrusion, the means used, the frequency and duration of the intrusion, and the underlying purpose behind the intrusion. See *id.* at 519-522; *Ellis, supra* at 637-638. See also W.L. Prosser & W.P. Keeton, Torts § 117, at 856 (5th ed. 1984) (Prosser & Keeton) (two most important factors are means used and underlying purpose). Thus, in *Ellis, supra,* the plaintiffs survived summary judgment on their intrusion claim by producing evidence that the defendant insurance investigator waited in front of their home, made numerous telephone calls to their home and work, followed them extensively, and acted out of a racially motivated purpose to harass.

In determining whether a defendant committed an unreasonable intrusion, we balance the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion. See *Webster* v. *Motorola, Inc.,* 418 Mass. 425, 431-434 (1994); *O'Connor* v. *Police Comm'r of Boston,* 408 Mass. 324, 330 (1990); *Bratt* v. *International Business Machs. Corp.,* 392 Mass. 508, 520-521 (1984). Here, the plaintiffs allege that McMahon installed several video cameras directed at their property, that these cameras can see through their windows into the interior of their home, that the cameras record their home on a continuous basis, and that McMahon installed the cameras in order to cause them extreme discomfort and distress and drive them out of the neighborhood.[5]

"Nowhere are expectations of privacy greater than in the

---

[5] McMahon suggests that these allegations are speculative because they are

home, and '[i]n the home . . . *all* details are intimate details . . . .' " *Commonwealth* v. *Balicki*, 436 Mass. 1, 12 n.14 (2002), quoting *Kyllo* v. *United States*, 533 U.S. 27, 37 (2001). See Restatement (Second) of Torts § 652B, comment b (1977) (defendant may intrude on plaintiff's seclusion by looking into plaintiff's windows). Moreover, even where an individual's conduct is observable by the public, the individual still may possess a reasonable expectation of privacy against the use of electronic surveillance that monitors and records such conduct for a continuous and extended duration. Cf. *Commonwealth* v. *Rousseau*, 465 Mass. 372, 382 (2013); *Commonwealth* v. *Balicki*, *supra* at 11-13 (use of video and still cameras to document search of home exacerbated its intrusiveness). Considered in light of these factors, McMahon's alleged motive to harass converts his video surveillance of the interior of the plaintiffs' home into an unreasonable intrusion. See *Ellis*, *supra* at 638; 1 J.T. McCarthy, The Rights of Publicity and Privacy § 5:99, at 709 (2013) ("when surveillance aims to frighten or torment a targeted person, there is an unreasonable intrusion upon privacy"); Prosser & Keeton, *supra* at § 117, at 856 (surveillance may qualify as unreasonable intrusion if done for improper purpose). Cf. *Schlesinger*, *supra* at 519 (emphasizing that telephone calls were not part of "pattern of harassment" and "were not calculated to annoy or disturb").

McMahon argues that he installed the video cameras not to harass the plaintiffs but to provide security for his property, and that the cameras only incidentally capture parts of the plaintiffs' home observable from the public way. He points out that "in an industrial and densely populated society, some intrusions into one's private sphere are inevitable." *Schlesinger*, *supra* at 520, quoting R. Rodman, Procedural Forms § 1051, at 491 (1990). Whether McMahon acted for the legitimate purpose of securing his property in a way that outweighs any incidental intrusion on the plaintiffs' privacy interests is, however, a question of fact not suitable for resolution on a motion to dismiss. See *Webster*

based on no more than "information and belief." For purposes of surviving a motion to dismiss, however, a party may allege facts based on "information and belief," see, e.g., *Care & Protection of Lillian*, 445 Mass. 333, 337 (2005), and we assume the truth of such allegations. See *Galiastro* v. *Mortgage Elec. Registration Sys., Inc.*, 467 Mass. at 164.

v. *Motorola, Inc.*, 418 Mass. at 434; *Walker* v. *Jackson*, 952 F. Supp. 2d at 354. Cf. *Peckham* v. *New England Newspapers, Inc.*, 865 F. Supp. 2d 127, 132 (D. Mass. 2012) (in general, "the determination about newsworthiness [i.e., whether a legitimate public concern outweighs a plaintiff's interest in keeping information private] is made only after discovery has been completed").

That McMahon allegedly acted out of a desire to harass the plaintiffs in order to drive them out of the neighborhood also transforms his surveillance into a "substantial or serious" intrusion under G. L. c. 214, § 1B. See *Ellis, supra* at 638. Because the plaintiffs have alleged a continuous surveillance of the interior of their home that was conducted for the purpose of harassment, the plaintiffs have made out a plausible claim for invasion of privacy.

b. *Intentional infliction of emotional distress.* To make out a claim of intentional infliction of emotional distress, the plaintiffs were required to show (1) that McMahon intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe. See *Howell* v. *Enterprise Publ. Co.*, 455 Mass. 641, 672 (2010); *Sena* v. *Commonwealth*, 417 Mass. 250, 263-264 (1994).

"The standard for making a claim of intentional infliction of emotional distress is very high." *Doyle* v. *Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996), citing *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976). See *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 99 (1987), quoting *Agis* v. *Howard Johnson Co., supra* at 144 ("the door to recovery should be opened but narrowly and with due caution"). "Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' " *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997), quoting *Foley* v. *Polaroid*

*Corp., supra.* Conduct qualifies as extreme and outrageous only if it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Roman* v. *Trustees of Tufts College*, 461 Mass. 707, 718 (2012), quoting *Foley* v. *Polaroid Corp., supra.* A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level. See *Beecy* v. *Pucciarelli*, 387 Mass. 589, 596 (1982).

The plaintiffs allege three types of activities engaged in by McMahon that, they contend, in combination support a finding of extreme and outrageous conduct: (1) filing false police reports and harassment prevention petitions against the plaintiffs; (2) verbally attacking the plaintiffs; and (3) monitoring and recording the plaintiffs' home on a continuous basis. Even putting "as harsh a face on [McMahon's] actions . . . as the basic facts would reasonably allow," the plaintiffs have not alleged sufficiently extreme and outrageous conduct. See *Richey* v. *American Auto. Ass'n, Inc.*, 380 Mass. 835, 839 (1980).

First, in determining whether McMahon engaged in extreme and outrageous conduct, we do not consider the allegations that he filed false police reports and harassment prevention petitions. For a defendant's conduct to qualify as extreme and outrageous, the defendant must have acted "without privilege." See *Agis* v. *Howard Johnson Co.*, 371 Mass. at 144; *Robert L. Sullivan, D.D.S., P.C.* v. *Birmingham*, 11 Mass. App. Ct. 359, 367 (1981). Under the "anti-SLAPP" statute, G. L. c. 231, § 59H, an individual may not be sued for exercising the right to petition, including the right to file police reports and harassment prevention petitions, unless the party bringing the suit can show that the petitioning activities lacked any reasonable factual support or arguable basis in law. See *Benoit* v. *Frederickson*, 454 Mass. 148, 152-153 (2009), and cases cited. The motive behind such petitioning activity does not matter. See *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 122 (2002); *Fabre* v. *Walton*, 436 Mass. 517, 523-524 (2002), *S.C.*, 441 Mass. 9 (2004).

The judge dismissed the plaintiffs' abuse of process and malicious prosecution claims because the plaintiffs had not shown that McMahon lacked a reasonable basis for his petitioning activities, and the plaintiffs have not appealed from this ruling.

Thus, the plaintiffs may not rely on McMahon's petitioning conduct as the basis for their claim of intentional infliction of emotional distress. See, e.g., *Baker* v. *Parsons*, 434 Mass. 543, 547 n.8, 554-555 (2001); *McLarnon* v. *Jokisch*, 431 Mass. 343, 344-345, 349 (2000). Cf. *Sena* v. *Commonwealth*, 417 Mass. at 264, quoting *Agis* v. *Howard Johnson Co.*, 371 Mass. at 145 ("Neither applying for an arrest warrant, nor making an arrest pursuant to an issued warrant can be considered 'utterly intolerable in a civilized community' "). Contrast *Vittands* v. *Sudduth*, 49 Mass. App. Ct. 401, 410-411, 414 (2000) (defendant neighbors' conduct, including filing suit against plaintiff, could be viewed as extreme and outrageous where plaintiff met burden of proving defendants' suit devoid of reasonable factual or legal support).

Turning to McMahon's other actions that the plaintiffs allege to be extreme and outrageous, the complaint references only the single "verbal[] attack" that occurred when police responded to McMahon's report that Morse's car prevented him from pulling out of his driveway, and does not describe the content of this verbal attack.[6] This allegation supports nothing more than mere "insults" or "threats" of the sort that fail to establish extreme and outrageous conduct. See *Roman* v. *Trustees of Tufts College*, 461 Mass. at 718; Restatement (Second) of Torts § 46, comment d, illustration 4 (1965) (no extreme and outrageous conduct where individual "calls [telephone operator] a God damned woman, a God damned liar, and says that if he were there he would break her God damned neck").

Neither does the plaintiffs' allegation of constant video surveillance fill the gap. That McMahon allegedly acted for the illegitimate purpose of harassing the plaintiffs supports their claim of an unreasonable and substantial or serious invasion of privacy, see part 1.a, *supra*, but does not raise McMahon's conduct to the level of extreme and outrageous behavior. See *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. at 466,

---

[6]In their brief, the plaintiffs refer to other verbal attacks and threats that were not alleged in their complaint. These additional assertions appeared in affidavits attached to the plaintiffs' opposition to McMahon's special motion to dismiss, and we do not consider them. See *Eigerman* v. *Putnam Invs., Inc.*, 450 Mass. 281, 285 n.6 (2007).

quoting *Foley* v. *Polaroid Corp.*, 400 Mass. at 99 (it does not suffice "that the defendant has acted with an intent which is tortious or even criminal, . . . or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort"); *Alderson* v. *Bonner*, 142 Idaho 733, 739-741 (Ct. App. 2006) (evidence that defendant watched plaintiff through her home windows sufficed to show invasion of privacy but did not suffice to show intentional infliction of emotional distress).

The plaintiffs also fail sufficiently to allege severe emotional distress. Other than referring to the plaintiffs' emotional distress as "extreme," the complaint contains only the conclusory statement that "the emotional distress suffered by the [p]laintiffs was severe and of such a nature that no reasonable person could be expected to endure it." This statement does not constitute an allegation of fact but rather a recitation of the element of severe emotional distress. See, e.g., *Agis* v. *Howard Johnson Co.*, 371 Mass. at 145. Such "bare assertions" do not suffice. See *Galiastro* v. *Mortgage Elec. Registration Sys., Inc.*, 467 Mass. at 174; *Leavitt* v. *Brockton Hosp., Inc.*, 454 Mass. 37, 39 n.6 (2009). Hence, there was no error in the judge's dismissal of the plaintiffs' claim of intentional infliction of emotional distress.

2. *Attorney's fees.* Pursuant to the anti-SLAPP statute, "[i]f the court grants [the] special motion to dismiss, the court shall award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters." G. L. c. 231, § 59H. This award is "mandatory." *North Am. Expositions Co. Ltd. Partnership* v. *Corcoran*, 452 Mass. 852, 872 (2009). The moving party need not prevail on all counts to qualify for an award, although a judge has discretion to reduce the award to account for such limited success. See *Wenger* v. *Aceto*, 451 Mass. 1, 9 n.10 (2008); *Giuffrida* v. *High Country Investor, Inc.*, 73 Mass. App. Ct. 225, 244 (2008). A judge also has discretion to award attorney's fees and costs beyond those incurred in bringing the special motion itself. *Office One, Inc.* v. *Lopez*, 437 Mass. at 126.

Here, the judge awarded McMahon $9,654.53 for costs and attorney's fees associated with defending against all of the

plaintiffs' claims, including those for which the judge did not grant McMahon's special motion to dismiss. The plaintiffs argue that the fee-shifting provision does not apply because McMahon's liability insurer paid for his defense and he did not himself "incur" any attorney's fees. We do not agree that the statute contains such a limitation.

Nothing about the statutory term "incurred" precludes application of the fee-shifting provision where the fees were "incurred" by a third party acting on a defendant's behalf. See *United Cos. Lending Corp.* v. *Sargeant*, 32 F. Supp. 2d 21, 25 (D. Mass. 1999), quoting *Bowers* v. *Boyd*, 929 F. Supp. 925, 933 (D.S.C. 1995), aff'd sub nom. *Burnside* v. *Boyd*, 89 F.3d 827 (4th Cir. 1996) ("Where otherwise authorized, . . . awards of attorneys' fees 'are not obviated by the fact that individual [parties] are not obligated to compensate their counsel' "). Indeed, applying the fee-shifting provision under these circumstances furthers the statute's underlying purposes of broadly protecting petitioning activity and promoting resolution of "SLAPP" litigation "quickly with minimum cost." See *Office One, Inc.* v. *Lopez*, 437 Mass. at 126, quoting *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 161 (1998). Cf. *Ketchum* v. *Moses*, 24 Cal. 4th 1122, 1131 (2001) ("The [California anti-SLAPP] fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party [bringing the suit]"). This application of the statute affords deterrence against SLAPP suits without regard to whether a defendant happens to carry liability insurance. It also protects individuals who may face a SLAPP suit from bearing the cost of litigation in some other, less direct form, such as an increase in liability insurance premiums. Thus, under G. L. c. 231, § 59H, McMahon is entitled to attorney's fees notwithstanding that his insurer paid for his defense. Cf. *Macias* v. *Hartwell*, 55 Cal. App. 4th 669, 675-676 (1997) (defendant was entitled to attorney's fees under California's anti-SLAPP statute even though fees were paid by defendant's labor union); *Poulard* v. *Lauth*, 793 N.E.2d 1120, 1124-1125 (Ind. Ct. App. 2003) (defendant was entitled to attorney's fees under Indiana's anti-SLAPP statute even though fees were paid by defendant's insurer).

Additionally, the plaintiffs contend that McMahon's attorney's fees were unreasonable in that counsel spent excessive time preparing the special motion to dismiss. The motion judge "is in the best position to determine how much time was reasonably spent on a case." *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 324 (1993). The judge did not abuse his discretion in determining the attorney's fees to be reasonable. See *North Am. Expositions Co. Ltd. Partnership* v. *Corcoran*, 452 Mass. at 872; *Office One, Inc.* v. *Lopez*, 437 Mass. at 126, 127 n.18. Nonetheless, we remand the matter on the issue of attorney's fees so that the judge may consider whether the fee award must be reduced in light of the reinstatement of the plaintiffs' claim of invasion of privacy.

In his brief, McMahon also requests costs and attorney's fees related to this appeal. Because the appeal does not involve the dismissal of any claims pursuant to G. L. c. 231, § 59H, we allow this request only as to the costs and fees incurred in defending the fee award. See *Wenger* v. *Aceto*, 451 Mass. at 9 n.10. As to that issue, McMahon may seek reasonable attorney's fees and costs in accordance with the procedure set forth in *Fabre* v. *Walton*, 441 Mass. 9, 10 11 (2004).

*Conclusion.* So much of the judgment of dismissal as relates to the claim of invasion of privacy is reversed, and the remainder of the judgment is affirmed. The order awarding attorney's fees is vacated and set aside. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*