ANNE-MARIE GALIASTRO & another[1] *vs.* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., & another.[2]

Worcester. October 7, 2013. - February 13, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Practice, Civil,* Motion to dismiss, Retroactivity of judicial holding. *Retroactivity of Judicial Holding. Mortgage,* Foreclosure, Real estate. *Real Property,* Mortgage. *Consumer Protection Act,* Unfair act or practice. *Conspiracy.*

This court extended its holding in *Eaton* v. *Federal Nat'l Mtge. Ass'n,* 462 Mass. 569 (2012) (*Eaton*), in which this court held that a foreclosure by power of sale pursuant to G. L. c. 183, § 21, and G. L. c. 244, §§ 11-17C, is invalid unless a foreclosing party holds the mortgage and also either holds the underlying mortgage note or acts on behalf of the note holder, to cases that preserved the issue presented in *Eaton* and were pending on appeal in the Appeals Court when the rescript in *Eaton* issued [165-170]; thus, where a Superior Court judge dismissed, for failure to state a claim, a complaint alleging that a foreclosing party was neither the note holder nor acting as an agent of the note holder, this court vacated the dismissal and remanded the matter for further proceedings [170-171].

In a civil action brought by plaintiffs challenging the validity of a foreclosure by power of sale, the judge did not err in dismissing, for failure to state a claim, the plaintiff's allegation that the foreclosing party violated G. L. c. 93A by foreclosing without complying with an order issued in response to a consumer protection enforcement action, where, on its face, the mortgage in question was not presumptively unfair under the terms of the order [171-173]; further, dismissal was warranted on the plaintiffs' claim of civil conspiracy, which contained mere recitals of elements necessary to establish such a claim [174].

This court declined to award attorney's fees in an appeal that was not frivolous. [174-175]

CIVIL ACTION commenced in the Superior Court Department on March 29, 2010.

A motion to dismiss was heard by *John S. McCann,* J.

The Supreme Judicial Court granted an application for direct appellate review.

[1]Joseph Galiastro.

[2]Harmon Law Offices, P.C.

*Glenn F. Russell, Jr.,* for the plaintiffs.

*Robert M. Brochin* (*Todd S. Holbrook* with him) for Mortgage Electronic Registration Systems, Inc.

*Nathalie K. Salomon* for Harmon Law Offices, P.C.

*Grace C. Ross,* pro se, amicus curiae, submitted a brief.

*Geoffry Walsh,* for National Consumer Law Center, amicus curiae, submitted a brief.

DUFFLY, J. We address in this case whether the plaintiffs and others who had appeals pending in the Appeals Court when we decided *Eaton* v. *Federal Nat'l Mtge. Ass'n,* 462 Mass. 569, 569 (2012) (*Eaton*), may pursue claims seeking to invalidate foreclosure proceedings based on our decision in that case.[3] We held in *Eaton* that a foreclosure by power of sale pursuant to G. L. c. 183, § 21, and G. L. c. 244, §§ 11-17C, is invalid unless a foreclosing party holds the mortgage and also either holds the underlying mortgage note or acts on behalf of the note holder. *Id.* at 571. We concluded also that the interpretation of "mortgagee" in statutes governing foreclosures under statutory power of sale provisions would have only prospective effect, although we applied our newly announced interpretation to the claims asserted by the plaintiffs in that case. *Id.* We now extend application of the holding in *Eaton* to cases such as this one, in which the issue was preserved and an appeal was pending in the Appeals Court on June 22, 2012, the date of the rescript in *Eaton.*

*Background.*[4] The plaintiffs, Anne-Marie and Joseph Galiastro (Galiastros), obtained a home mortgage loan on July 26, 2006, from Fremont Investment & Loan (Fremont).[5] To secure the obligation, the Galiastros contemporaneously granted a mortgage on the home to defendant Mortgage Electronic Registration Systems, Inc. (MERS), which was described in the mortgage

---

[3]We acknowledge the amicus briefs of the National Consumer Law Center and Grace C. Ross.

[4]We draw our summary of the background facts and proceedings from the plaintiffs' complaint, as well as other documents in the record that were attached to responsive pleadings, assuming, as we must, *Iannacchino* v. *Ford Motor Co.,* 451 Mass. 623, 635-636 (2008), that the facts alleged in the complaint are true. We summarize the proceedings post filing of the Galiastros' complaint from other documents in the record.

[5]Fremont Investment & Loan (Fremont) is not a party in these proceedings.

as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." The Galiastros ultimately defaulted on their mortgage payments; on March 1, 2010, Harmon Law Offices, P.C. (Harmon), as legal counsel for MERS, notified them of MERS's intention to foreclose by statutory power of sale pursuant to G. L. c. 244, § 14.

On March 29, 2010, the Galiastros filed a complaint in the Superior Court against MERS and Harmon, claiming, inter alia, that MERS did not have standing to initiate foreclosure proceedings because it was not the holder of the Galiastros' promissory note, nor was it an authorized agent of any note holder.[6] The Galiastros also filed a motion for injunctive relief seeking to enjoin MERS from proceeding with the foreclosure. In July, 2010, a Superior Court judge denied the Galiastros' motion for a preliminary injunction, and MERS subsequently filed a motion to dismiss the complaint pursuant to rule 12 (b) (6) of the Massachusetts Rules of Civil Procedure, 365 Mass. 754 (1974).[7]

When the Galiastros sought to enjoin the foreclosure proceedings, our decision in *Eaton* had not issued. In that case, we determined that the term "mortgagee" as used in G. L. c. 183, § 21, and G. L. c. 244, §§ 11-17C, although not free from ambiguity, "refer[s] to the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder." *Eaton, supra* at 571. We therefore concluded that unless a foreclosing party holds the mortgage and is either the note holder or an authorized agent of the note holder, a foreclosure by power of sale pursuant to G. L. c. 183, § 21, and G. L. c. 244, §§ 11-17C, is invalid. See *Eaton,*

---

[6]The complaint asserted also that Mortgage Electronic Registration Systems, Inc. (MERS), violated G. L. c. 93A by initiating foreclosure proceedings without first notifying the Attorney General's office as required by the Superior Court judge's order affirmed in *Commonwealth* v. *Fremont Inv. & Loan*, 452 Mass. 733, 740, 752 (2008) (Fremont order); and that MERS and its counsel, Harmon Law Offices, P.C. (Harmon), engaged in fraud and civil conspiracy when they initiated foreclosure proceedings. The Galiastros sought both damages and injunctive relief.

[7]Harmon filed an answer to the Galiastros' complaint. It subsequently filed a motion to dismiss, incorporating therein the arguments set forth in the memorandum of law filed by MERS in support of its motion, as well as a supplemental memorandum submitted by Harmon asserting the litigation privilege as an additional basis for dismissal of the fraud and conspiracy claims.

*supra* at 586. In this case, MERS has argued repeatedly against this interpretation of G. L. c. 183, § 21, and G. L. c. 244, §§ 11-17C.

For purposes of the motion to dismiss, MERS accepted[8] the Galiastros' allegation that MERS neither held the note nor acted as an authorized agent of the note holder.[9] The animating premise of its motion was that the "allegations that MERS lacks standing because it does not hold the note or the right to enforce the note is without support under Massachusetts law." In January, 2011, a Superior Court judge granted the defendants' motions to dismiss "for the reasons set forth in the [d]efendants' memorandum."

The Galiastros appealed from the judgment of dismissal; their appeal was entered in the Appeals Court on February 24, 2011, and the parties thereafter filed briefs. On September 6, 2011, we transferred to this court on our own motion an appeal filed in the Appeals Court on August 24, 2011, seeking relief from a preliminary injunction in Eaton *vs.* Federal Nat'l Mtge. Ass'n, No. SUCV2011-01382, Suffolk Sup. Ct. (June 17, 2011). See *Eaton, supra* at 570-571. The Appeals Court then stayed all proceedings in the instant case pending our decision in *Eaton.* The rescript in *Eaton* issued on June 22, 2012, and on July 11, 2012, the Appeals Court vacated its stay in this case. We thereafter allowed the Galiastros' petition for direct appellate review.

While these proceedings were pending, other activity was taking place that affected the status of the parties relevant to the issues in this case. On September 7, 2011, after the Galiastros' appeal was docketed in the Appeals Court but before it was stayed, MERS, as nominee for Fremont, assigned the Galiastros' mortgage to "Deutsche Bank National Trust Company, as Trustee for Fremont Home Loan Trust 2006-3" (Deutsche Bank).

---

[8] Emphasizing that it accepted the well-pleaded facts only for purposes of the motion to dismiss, MERS stated also that the allegation that it was not an authorized agent of Fremont is "conclusory."

[9] MERS filed a motion to dismiss in lieu of an answer to the complaint. Harmon filed an answer in which it admitted on information and belief that MERS did not hold the note, but denied the allegation that "MERS is not an authorized agent of Fremont." Harmon's answer asserted that the note had been sold to "Deutsche Bank National Trust Company as Trustee for Fremont Home Loan Trust Series 2006-3."

On November 18, 2011, the Galiastros received a notice that Deutsche Bank had scheduled an auction sale, and they then filed a motion in the Superior Court for a temporary restraining order seeking to prevent the commencement of foreclosure proceedings pending a decision on their appeal. On February 9, 2012, a Superior Court judge denied the motion on the ground that "Deutsche Bank is not a party to th[e] case and Deutsche Bank has both the mortgage and the note." Deutsche Bank then proceeded with the nonjudicial foreclosure sale, purchased the property, and brought a summary process action in the Housing Court seeking to evict the Galiastros from their home. The Galiastros moved to stay the eviction proceedings pending resolution of this appeal, and a Housing Court judge ordered a stay of the proceedings on the condition that the Galiastros pay use and occupancy costs while the stay was in effect.

The Galiastros since have vacated the property, and they acknowledge that their request for injunctive relief is now moot.[10] The Galiastros' complaint, however, also asserts claims for damages, and thus not all of their claims are moot. We consider, first, the ramifications of our decision in *Eaton* for the Galiastros and other parties who, at the time of the issuance of the rescript in *Eaton*, had cases pending on appeal based on preserved claims that the foreclosing party did not hold the note at the time of foreclosure. Second, we consider whether the motion judge erred in dismissing all the other claims raised by the Galiastros.

*Standard of review.* We review the allowance of a motion to dismiss de novo. See *Lopez* v. *Commonwealth*, 463 Mass. 696, 700 (2012). We accept as true the facts alleged in the plaintiffs' complaint as well as any favorable inferences that reasonably can be drawn from them. *Id.* Factual allegations are sufficient to survive a motion to dismiss under rule 12 (b) (6) if they "plausibly suggest [and are] (not merely consistent with)" an entitlement to relief. *Iannacchino* v. *Ford Motor Co.*, 451 Mass.

---

[10]According to documents in the record, upon vacating the property, the Galiastros transmitted a written communication to counsel for Deutsche Bank stating that the "matter before the Housing Court . . . regarding possession is now moot [and] [t]he related Court Ruling regarding Occupation is now moot." The Galiastros conceded this point at oral argument.

623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007). Although a complaint need not contain "detailed factual allegations," it must offer more than mere "labels and conclusions." *Iannacchino* v. *Ford Motor Co., supra*, quoting *Bell Atl. Corp.* v. *Twombly, supra* at 555. The factual allegations must "raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." *Iannacchino* v. *Ford Motor Co., supra*, quoting *Bell Atl. Corp.* v. *Twombly, supra*.[11]

*Discussion. Retroactive application of* Eaton. Whether the Galiastros' complaint states a claim entitling them to relief based on allegations that MERS lacked standing to effect a foreclosure by the power of sale depends first on whether the rule we announced in *Eaton* applies to the Galiastros' claims on appeal.

As stated, we determined in *Eaton* that the term "mortgagee" in G. L. c. 183, § 21, and G. L. c. 244, §§ 11-17C, must be interpreted to mean "a mortgagee who also holds the underlying mortgage note." *Eaton, supra* at 584. We therefore concluded that, unless a foreclosing party holds both the mortgage and the underlying mortgage note, a foreclosure by power of sale is invalid, unless the foreclosing party acts as an authorized agent of the note holder.[12] *Id.* at 586. In reaching that decision,

---

[11]MERS attached a copy of the mortgage and a copy of the note to its motion to dismiss. In its supporting memorandum, MERS stated that a copy of the mortgage and the note also were attached as exhibits to the plaintiffs' complaint. Because the Galiastros relied on these documents to frame their complaint, see *Golchin* v. *Liberty Mut. Ins. Co.*, 460 Mass. 222, 224 (2011), the judge could consider them in reviewing the motion to dismiss without converting that motion into one for summary judgment. See *Cumis Ins. Soc'y, Inc.* v. *BJ's Wholesale Club, Inc.*, 455 Mass. 458, 465 n.14 (2009); *Marram* v. *Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 45 n.4 (2004).

[12]Within two months of our decision in *Eaton, supra* at 569, the Legislature passed "An Act Preventing Unlawful and Unnecessary Foreclosures," which was to "take effect November 1, 2012." See St. 2012, c. 194. That legislation provides that a creditor "shall not" publish a notice of foreclosure under G. L. c. 244, § 14, "when the creditor knows or should know that the mortgagee is neither the holder of the mortgage note nor the authorized agent of the note holder." G. L. c. 244, § 35C (*b*), inserted by St. 2012, c. 194, § 2. A creditor "shall certify compliance" with this requirement in an affidavit recorded in the appropriate registry of deeds. G. L. c. 244, § 35C (*f*), inserted by St. 2012, c. 194, § 2.

we looked to long-standing common law and noted that, in Massachusetts, real estate mortgages operate under a "title theory," meaning that a mortgage is a transfer of legal title to the mortgagee that serves as security for the mortgagor's debt, as set forth in the underlying note. *Id.* at 575.

Under Massachusetts common law, in contrast to that in a number of other jurisdictions, the transfer of an underlying note does not carry with it the mortgage. *Id.* at 576, citing *Barnes* v. *Boardman*, 149 Mass. 106, 114 (1889). A mortgage thus can be separated from the note, and when it is, the mortgage holder acts as "equitable trustee for the note holder." *Eaton, supra* at 576-578. Therefore "at common law, a mortgagee possessing only the mortgage [and not the note] was without authority to foreclose on his own behalf." *Id.* at 578.

In *Eaton, supra* at 579-581, we applied the rules of statutory construction against this common-law background to reach the determination that, to be valid, a foreclosure effected through the statutory power of sale, as governed by and set forth in G. L. c. 183, § 21, and G. L. c. 244, §§ 11-17C, requires the mortgagee to hold the note or to act on behalf of the note holder. At the same time, we recognized that "none of our cases ha[d] considered directly the question whether a mortgagee must also hold the note or act on behalf of the note holder in order to effect a valid foreclosure by sale." *Eaton, supra* at 587-588. We also acknowledged that "there may be significant difficulties in ascertaining the validity of a particular title if the interpretation of 'mortgagee' . . . is not limited to prospective operation, because of the fact that our recording system has never required mortgage notes to be recorded." *Id.* at 588.

We therefore exercised our discretion to give our interpretation of the term "mortgagee" prospective effect, stating that our interpretation would "apply only to mortgage foreclosure sales for which the mandatory notice of sale has been given after the date of th[e] opinion [June 22, 2012]." *Eaton, supra* at 588-589, citing *Commonwealth* v. *Dagley*, 442 Mass. 713, 721 n.10 (2004), cert. denied, 544 U.S. 930 (2005) (where decision announces new interpretation of State statute, there is no "requirement that the new rule or new interpretation be applied retroactively"). Although decisional law interpreting a statute

generally applies retroactively, where it conveys an understanding of what the statute has meant since its enactment, we recognized in *Eaton, supra* at 588, that, in the context of property law, prospective application may be more appropriate because of the considerable reliance interests at stake, particularly where "prior law is of questionable prognostic value." *Id.,* quoting *Blood* v. *Edgar's, Inc.,* 36 Mass. App. Ct. 402, 407 (1994).

We nonetheless applied the newly announced interpretation of "mortgagee" to the litigants in *Eaton, supra* at 589. Although we observed that "somewhat similarly situated" parties would not receive the benefit of that interpretation, we did not decide whether parties in a procedural posture identical to that of the litigants in *Eaton* could receive such a benefit. *Id.,* citing *Bouchard* v. *DeGagne,* 368 Mass. 45, 48-49 (1975). Consequently, that question has resulted in conflicting treatment by different panels of the Appeals Court.[13] The Galiastros contend that the interpretation of "mortgagee" announced in *Eaton* should apply to them because they raised the same issue in an appeal that was stayed pending our decision in that case.

We agree, and we now decide that the interpretation of "mortgagee" announced in *Eaton* is applicable to cases that were pending on appeal in the Appeals Court when the rescript in *Eaton* issued,[14] and in which the litigants asserted and preserved a claim that a foreclosure by power of sale is invalid where the foreclosing mortgagee does not hold the note.[15] Where multiple cases await appellate review on precisely the same question, it

---

[13]Compare the following unpublished memoranda and orders issued pursuant to rule 1:28 of the Appeals Court, *Lyons* v. *Mortgage Electronic Registration Sys., Inc.,* 83 Mass. App. Ct. 1134 (2013) (*Eaton* applies to case presenting same issue and pending in Appeals Court when *Eaton* was decided), and *HSBC Bank USA, N.A.* v. *Norris,* 83 Mass. App. Ct. 1115 (2013) (same), with *Reynolds* v. *GMAC Mtge. LLC,* 83 Mass. App. Ct. 1124 (2013) (declining to apply *Eaton* to case presenting same issue as *Eaton* and pending in Appeals Court when *Eaton* was decided, but determining that mortgagee possessed both mortgage and note at time of foreclosure proceedings).

[14]Cases that were "pending on appeal" include those cases in which the case was docketed in the Appeals Court before June 22, 2012, and the Appeals Court had not yet issued a decision in the case; where the Appeals Court had issued a decision, cases in which litigants have filed a petition for further appellate review will also be considered as "pending on appeal," for purposes of the retroactive reach of our decision in *Eaton, supra.*

[15]A foreclosure by power of sale is not invalid if the foreclosing mortgagee

is inequitable for the case chosen as a vehicle to announce the court's holding to be singled out as the "chance beneficiary" of an otherwise prospective rule. See *United States* v. *Johnson*, 457 U.S. 537, 555 n.16 (1982) (noting "inequity that results" when multiple defendants raise same question on direct appeal and court chooses only one to be "chance beneficiary" of new rule); *Commonwealth* v. *Pring-Wilson*, 448 Mass. 718, 736 (2007) (affirming judge's decision that "fairness require[d]" application of prospective, nonconstitutional rule of criminal procedure in case that had preserved same issue and was on appeal when new rule was announced and where new rule was applied to parties in case announcing it). See also Bender, The Retroactive Effect of an Overruling Constitutional Decision: *Mapp* v. *Ohio*, 110 U. Pa. L. Rev. 650, 675-676 (1962) ("capricious" to apply new rule in case announcing rule while withholding application to relatively identical litigants who had raised same issue on direct review in same time frame). Cf. *Commonwealth* v. *Clemente*, 452 Mass. 295, 305 (2008), cert. denied, 555 U.S. 1181 (2009) (declining to apply rule applied in *Commonwealth* v. *Pring-Wilson*, *supra*, to case that was on appeal at same time because issue was not pressed at trial).

Our decision to expand our holding in *Eaton* to apply to cases that preserved the issue presented in that case and that were pending on appeal as of June 22, 2012, is consistent with the principles on which we relied in applying the interpretation of "mortgagee" to the *Eaton* parties. See *Eaton*, *supra* at 589, citing *Powers* v. *Wilkinson*, 399 Mass. 650, 663-665 (1987) (Abrams, J., concurring in part and dissenting in part). See also *Tucker* v. *Badoian*, 376 Mass. 907, 918-919 (1978) (Kaplan, J., concurring in the result); *Bouchard* v. *DeGagne*, *supra* at 48-49. Although in *Bouchard* v. *DeGagne*, *supra*, and *Tucker* v. *Badoian*, *supra*, we did not apply an otherwise prospective rule to the parties, we recognized in those cases that the court had authority to do so. In *Powers* v. *Wilkinson*, *supra* at 663-664

---

does not possess the note but acts as an authorized agent of the note holder. See *Eaton*, *supra* at 586. The Galiastros alleged that MERS did not hold the note and did not act as an agent of the note holder. However, for the purpose of preserving the issue of retroactive application, a litigant need only have asserted that the mortgagee did not possess the note, without additionally asserting that the mortgagee was not an authorized agent of the note holder.

(Abrams, J. , concurring in part and dissenting in part), one of the justices joined in the majority decision announcing a new prospective rule, but dissented from the majority's decision not to apply that rule to the litigants in the case. As the dissent observed, there were two reasons supporting application of the new rule to the litigants in the case. First, the court would have avoided the result that the announcement of the rule would "amount[] to no more than dictum." *Id.* at 663-664, and cases cited. Second, "and more importantly," the court would preserve the "incentive to bring challenges to existing precedent because the appellant [would not be] deprived of the benefit for the work and expense involved in challenging the old rule." *Id.* at 664, and cases cited.

Preservation of the incentive to challenge existing precedent provides as much reason to extend changes in the law to litigants in the case announcing the change, as it does to litigants who raise the same issue in cases pending on appeal. Like the litigants in *Eaton*, the Galiastros had filed and perfected their appeal in the Appeals Court, and had argued that a mortgagee must hold the note in order to validly foreclose. Such litigants should not be "deprived of the benefit of the work and expense involved in challenging the old rule."[16] *Powers* v. *Wilkinson*, 399 Mass. at 663-664.

---

[16]The dissent in *Powers* v. *Wilkinson*, 399 Mass. 650, 663-665 (1987) (Abrams, J., concurring in part and dissenting in part), did not address explicitly whether cases awaiting appellate review on the same issue should receive the benefit of a prospective rule that is applied to the parties in a given case. The dissent did, however, indicate a willingness to accept the uneven treatment that would result if "only the litigant is benefited by the new rule" and similarly situated parties are not benefited. See *id.* at 665 n.4. In that regard, the dissent relied on the reasoning in *Stovall* v. *Denno*, 388 U.S. 293, 301 (1967), but *Stovall* v. *Denno, supra*, has since been overruled by the United States Supreme Court. See, e.g., *Griffith* v. *Kentucky*, 479 U.S. 314, 322-323 (1987) (overruling *Stovall* v. *Denno, supra*, because "after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review"). Thereafter, in crafting our own doctrine of retroactivity in the criminal context, we relied on the reasoning in *Griffith* v. *Kentucky, supra* at 323, drawing on its conclusion that "selective application of new rules . . . violates the principle of treating similarly situated defendants the same." See *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202 (1992), quoting *Griffith* v. *Kentucky, supra*. See also *Commonwealth* v. *Bray*, 407 Mass. 296, 299 (1990), quoting *Griffith* v. *Kentucky, supra*.

Applying the interpretation of "mortgagee" in *Eaton* to this case, and others that were pending appellate review on the same issue, respects the concern identified in *Eaton, supra* at 586, that holding as we did could "wreak havoc with the operation and integrity of the title recording and registration systems by calling into question the validity of any title that has a foreclosure sale in the title chain." Although we now exercise our discretion to allow a limited set of litigants to seek relief on the basis of the interpretation of the term "mortgagee" announced in *Eaton*, that interpretation of "mortgagee" otherwise remains applicable "only to mortgage foreclosure sales for which the mandatory notice of sale has been given after [June 22, 2012]." *Id.* at 589. Recognizing an exception only for the parties in *Eaton*, and for cases pending on appeal that raise the same issue, accommodates and preserves the reliance interests that warranted giving prospective effect to the interpretation of "mortgagee" to the *Eaton* plaintiffs, while limiting the "unevenness [that] is an inevitable consequence of any change in doctrine."[17] See *Johnson Controls, Inc.* v. *Bowes*, 381 Mass. 278, 283 n.4 (1980).

Having decided that the interpretation of "mortgagee" announced in *Eaton* applies to this case, we consider whether any of the claims asserted in the Galiastros' complaint remain viable.

*Standing to foreclose.* The Galiastros allege in their complaint that Fremont was the original holder of the note when the Galiastros executed the mortgage on July 26, 2006; that "shortly after" this date, Fremont divested itself of any ownership rights in the note; that the note thereafter was held by an "undisclosed securitized trust"; that the identity of the note holder was otherwise unknown;[18] and that MERS was not an "authorized

---

[17]If, as a result of our decision, a litigant in one of these pending cases ultimately obtains a judicial determination that a foreclosure by power of sale was void given our ruling in *Eaton*, then there will be no foreclosure sale in the chain of title. If a court in one of these pending cases determines that the foreclosure was valid, then the chain of title is not thrown into doubt. In all other cases where a notice of foreclosure issued prior to June 22, 2012, the validity of the foreclosure sale is not affected by whether the mortgagee was either the note holder or the authorized agent of the note holder. See note 14, *supra.*

[18]In its answer, Harmon stated that, "upon information and belief, the

agent of any purported undisclosed principal."[19] Assuming these factual allegations to be true, as we must in reviewing a motion to dismiss, *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635-636 (2008), the allegations plausibly suggest an entitlement to relief that is premised on establishing that MERS was neither the note holder nor acting as an agent of the note holder when it commenced foreclosure proceedings. At oral argument, the Galiastros stated a tort theory of liability for damages on the basis of their claim that MERS asserted standing to foreclose and commenced foreclosure proceedings without holding the note or acting as an agent of the note holder. Thus, the complaint should not have been dismissed for failure to state a claim on these grounds, even though the Galiastros' claim for injunctive relief is now moot. See note 10, *supra*. Therefore, without regard to the likelihood of success in developing this or an alternate theory of damages in light of the applicability of our holding in *Eaton*, we vacate the dismissal of the claim for damages and remand for further proceedings.

*Violation of G. L. c. 93A.* In addition to alleging that MERS lacked standing validly to foreclose on the mortgage by power of sale, the complaint alleges that MERS violated G. L. c. 93A, § 2, when it engaged in conduct aimed at evading the terms of an order providing injunctive relief entered by the Superior Court and affirmed by this court (Fremont order). See *Commonwealth* v. *Fremont Inv. & Loan*, 452 Mass. 733, 735 (2008).

The Fremont order issued in response to a consumer protection enforcement action brought by the Attorney General against Fremont, contending that Fremont had engaged in unfair and deceptive practices between 2004 and 2007 by originating and

underlying loan was sold to Deutsche Bank National Trust Company as Trustee for Fremont Home Loan Trust Series 2006-3." See note 9, *supra*.

[19]MERS accepted, for purposes of the motion to dismiss, the Galiastros' allegation that it was not an authorized agent of the note holder. See note 8, *supra*. On appeal, MERS argues for the first time that it was an agent of the note holder and thus should prevail even if the conclusion reached in *Eaton* applies. As support, MERS points to a clause in the Galiastros' mortgage providing that MERS is a "nominee for Lender and Lender's successors and assigns." As was the case in *Eaton*, *supra* at 590 n.4, "[i]t is not clear what 'nominee' means in this context, but the use of the word may have some bearing on the agency question."

servicing certain subprime mortgage loans. See *Commonwealth v. Fremont Inv. & Loan, supra* at 734-735. The injunction, as modified, requires Fremont to "give advance notice to the Attorney General of its intent to foreclose on any of its home mortgage loans," and further that "any assignment, sale, or transfer of ownership rights or servicing obligations by Fremont be conditioned on the assignee's or purchaser's acceptance of the obligations imposed by the preliminary injunction." *Id.* at 739-740. If a Fremont-originated loan is determined by the Attorney General to be "presumptively unfair" based on four criteria specified in the order, and the loan is secured by the borrower's principal dwelling, then Fremont (or its assignee) is required to work with the Attorney General in attempting to "resolve" the issues regarding foreclosure, "presumably through a restructure or workout of the loan," before seeking court approval for foreclosure. See *id.* at 740. If the loan is not presumptively unfair, then a workout need not be attempted, and court approval is not required, before foreclosure proceedings may commence. See *id.*

The foundation of the Galiastros' claim is that MERS violated the Fremont order by failing to notify the Attorney General prior to initiating a foreclosure of its Fremont-originated loan. The Galiastros' complaint alleges that they entered into a loan with Fremont in 2006, that Fremont transferred the loan to an undisclosed party on an undisclosed date, and that neither Fremont nor the undisclosed assignee provided notice to the Attorney General of the foreclosure proceedings that MERS initiated in March, 2010. The Galiastros further allege that MERS, directly or through knowledge of its counsel, knew that the Galiastros' loan was Fremont-originated and that an assignee of a Fremont loan was required to notify the Attorney General prior to commencing a foreclosure. Based on these allegations, the Galiastros claim that MERS acted deceptively by initiating foreclosure proceedings in its name as mortgagee, knowing that disclosure of the identity of the holder of the note would reveal a violation of the Fremont order. The Galiastros allege that MERS intentionally acted so as to obscure facts which would have revealed that their mortgage fell under the purview of the Fremont order, and that MERS undertook these

acts in order to foreclose on a subprime loan without review by the Attorney General.

Even assuming that MERS had acted deceptively to avoid notification to the Attorney General of the foreclosure, the Galiastros' claim under G. L. c. 93A would fail. Although the complaint makes the assertion that "[t]he Galiastros mortgage meets the[] four characteristics [of the Fremont order]," the copy of the Galiastros' mortgage and note attached to the complaint shows that the mortgage did not meet the four criteria that characterize loans as presumptively unfair in the Fremont order. See note 11, *supra.* See also *Golchin* v. *Liberty Mut. Ins. Co.,* 460 Mass. 222, 224 (2011) (in reviewing motion to dismiss, court considers documents attached to motion to dismiss where plaintiff relied upon them in framing complaint). Cf. *Olpin* v. *Ideal Nat'l Ins. Co.,* 419 F.2d 1250, 1255 (10th Cir. 1969), cert. denied, 397 U.S. 1074 (1970) (in reviewing motion to dismiss under Fed. R. Civ. P. 12[b][6], court must accept plaintiff's factual allegations as true unless they are contradicted by terms of document attached to complaint). Because the Galiastros' mortgage was not an adjustable rate mortgage with an introductory period of three years or less, it did not meet the first of the four criteria set forth in the Fremont order. See *Commonwealth* v. *Fremont Inv. & Loan, supra* at 739. Thus, on its face the mortgage is not "presumptively unfair" under the terms of the Fremont order. Accordingly, even if the Attorney General had been informed of MERS's initiation of foreclosure proceedings against the Galiastros, the Fremont order provides no basis on which the Attorney General could have objected to the foreclosure; nor would the Fremont order have entitled the Galiastros to relief such as a workout arrangement, or the requirement of court approval before foreclosure could proceed.

The Galiastros therefore failed to state a claim that could support an entitlement to relief pursuant to G. L. c. 93A, either for conduct that unfairly sought to avoid the requirements of the Fremont order, or for direct violation of that order.[20] See *Iannacchino* v. *Ford Motor Co.,* 451 Mass. 623, 635-636 (2008). We affirm the judgment of dismissal on this claim.

[20]The Galiastros' G. L. c. 93A claim is limited to allegations that MERS violated the Superior Court's order (Fremont order), see *Commonwealth* v.

*Civil conspiracy and fraud claims.* The Galiastros appear to argue that Harmon entered into a civil conspiracy with MERS by using a fraudulent method to foreclose on the Galiastros' Fremont-originated loan without complying with the Fremont order. This method consisted of Harmon first assigning the mortgage to MERS and then having MERS foreclose on the mortgage, since MERS was structured in such a way that it was possible to seek foreclosure without disclosure of the Fremont-originated note.

In support of this claim, the complaint asserts that "[t]he actions of both parties [MERS and Harmon] appear to imply they acted in concert to bring [the foreclosure] action," and with a "willful disregard of the prohibition against foreclosing on Fremont originated loans." These assertions constitute mere recitals of elements necessary to establish a civil conspiracy claim. Cf. *Kurker* v. *Hill*, 44 Mass. App. Ct. 184, 188 (1998). Such assertions are supported only by the allegation that Harmon provided legal representation to MERS, and do not alone suggest a plausible claim for relief. Although a complaint need not provide "detailed factual allegations," it must offer more than mere "labels and conclusions." *Iannacchino* v. *Ford Motor Co.*, 451 Mass. at 636. "[B]are assertion[s]" will not suffice. *Id.* at 632-633. The claim fails to state a claim for relief under Mass. R. Civ. P. 12 (b) (6), and dismissal was warranted.[21]

The Galiastros make no argument concerning the dismissal of the fraud claim. Therefore, that claim is waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975) ("The appellate court need not pass upon questions or issues not argued in the brief").

*Appellate attorney's fees.* Contending that the Galiastros' claims were frivolous, Harmon seeks appellate attorney's fees and costs. See Mass. R. A. P. 25, as appearing in 376 Mass. 949

*Fremont Inv. & Loan*, 452 Mass. 733, 735 (2008), or acted deceptively to avoid disclosing that their loan was subject to the Fremont order. They make no allegations in their complaint, nor claim on appeal, that the terms of their mortgage, although not meeting each criterion of the Fremont order, were nonetheless unfair or deceptive such that a failure to negotiate a workout in lieu of foreclosure would amount to a violation of G. L. c. 93A.

[21]Because the allegations in the complaint are insufficient to state a claim for civil conspiracy, we do not reach Harmon's arguments on the litigation privilege.

(1979) ("If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee, and such interest on the amount of the judgment as may be allowed by law"). The only two claims that the Galiastros pressed against Harmon were the civil conspiracy and fraud claims, which we have concluded were dismissed properly. Given the complexity of the law surrounding the Fremont order and the applicability of our ruling in *Eaton*, however, it was not frivolous for the Galiastros to pursue their appeal, and Harmon is not entitled to an award of attorney's fees.

*Conclusion.* We vacate the judgments of dismissal on count one of the complaint, alleging a lack of authority to foreclose. We affirm the judgment of dismissal on counts two, three, and four alleging respectively a violation of G. L. c. 93A, civil conspiracy, and fraud. Finally, we vacate as moot the judgment of dismissal on count five, seeking an injunction. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*