This is the third full panel appeal arising out of a bitter feud between the surviving spouse of William Longstreth and Miriam Sawyer, the decedent's live-in companion during his golden years. The narrow issue presented concerns the propriety of a Probate and Family Court order and corrected modification judgment dated March 16, 2016. After review, we are satisfied that the judge's order was within his discretion, and affirm.
Background. We set forth only so much of the convoluted history as is necessary to decide this appeal. At the time of Longstreth's death on October 30, 2012, Miriam Sawyer resided in a house in Centerville owned by Longstreth (house). Miriam Sawyer had moved from California to Massachusetts in 2001, shipping fifty-two trunks and boxes to the house. In 2011, Longstreth returned to Texas with his wife, his sole heir.
Broadway National Bank (bank), the appointed personal representative of the estate of Longstreth (estate), commenced two proceedings of relevance here: a summary process action in the District Court to evict Miriam Sawyer and her adult children, and an equitable action in the Probate and Family Court to marshal and to preserve the estate's assets.
On February 26, 2014, the Probate Court entered a permanent injunction and judgment restraining the Sawyers from removing from the house property belonging, or formerly belonging, to the decedent. The injunction did not prohibit the Sawyers from removing their own property. Following the judgments of possession entered in favor of the estate, the Sawyers exhausted their appellate rights with respect to the judgments and stay of the execution.[4] However, the estate was unable to levy on it.[5]
The impasse over the parties' ownership rights triggered the filing of a complaint for modification of the Probate Court judgment. On November 24, 2015, a Probate Court judge issued a temporary order delineating the respective property rights of the parties.[6] Thereafter, the Sawyers were unable to obtain a stay of the execution, and after receiving prior notice of the eviction required by G. L. c. 239, § 3, they voluntarily vacated the premises, removed the trunks and boxes, and returned to California.[7]
On December 29, 2015, the estate executed the judgments of possession. Because there was no Sawyer property, as designated by the temporary order, present at the house, the moving and storage company was dismissed. During her walk-through, the bank's attorney discovered tags on many items in the house bearing the Sawyer name (tagged items).
On January 11, 2016, the Sawyers filed a counterclaim, seeking a declaration that the tagged items were the property of the Sawyers. At a status conference on February 9, 2016, the estate offered to the Sawyers ownership of all the tagged items on the condition that they remove them within two weeks. No efforts to remove the tagged items were made.
After a hearing on March 16, 2016, a Probate Court judge issued the order and corrected judgment that is the subject of this appeal. The judge declared that by agreement, all tagged items were the property of Camille and Miriam Sawyer. The order and corrected judgment further provided that in the event the Sawyers failed to retrieve their property by April 6, 2016, it would become property of the estate. The Sawyers did not remove their property and unsuccessfully sought a stay of the order and judgment.
In July, 2016, the estate sold the house and all its contents "as is" to a contractor, who agreed to dispose of all the mold-contaminated property in the house.
Discussion.[8] The judge did not err by declaring the respective property rights of the parties and imposing a three-week deadline on the Sawyers for the removal of their property. The authority to evaluate competing ownership claims to property remaining in the decedent's house fell squarely within the Probate Court's general equity jurisdiction. See G. L. c. 215, § 6. Moreover, the judge's broad equitable powers to fashion a reasonable time limit for the property removal were not constrained by the bonded storage laws. See G. L. c. 239, §§ 3, 4(a ). As of the date the eviction was effectuated here, the Sawyers had removed from the house all property designated as theirs by the Probate Court order. Pursuant to the same order, all the remaining tangible property in the house belonged to the estate. The estate had no obligation to place its own property into bonded storage, even if it was subject to a future claim. While the Sawyers had certainly affixed tags to certain items in the house before vacating, no valid counterclaim seeking title to those items had been filed. The judge did not err by declining to enforce bonded storage laws that were no longer applicable in March, 2016.
Nor did the judge err by allowing the estate's motion for judgment on the counterclaim. The estate offered to the Sawyers the relief they sought on their counterclaim: ownership of all the tagged items, which the Sawyers themselves had identified and tagged with tape after going through the house prior to their departure. At the March 16, 2016, hearing, the judge confirmed that the agreement extended to "every single item" that was marked by the Sawyers. No evidentiary hearing regarding title to these items was required.
The order and corrected judgment dated March 16, 2016, is affirmed.[9]
So ordered.
Affirmed.

By the admission of their attorney, the Sawyers left Massachusetts for fourteen months, pursuing their appeal of the judgments of possession from California. The Sawyers allegedly returned to the house in late summer, 2015.

A videotaped inventory taken by the bank's attorney on June 19, 2013, showed that many rooms of the house were piled high with personal belongings and trash. Several of Miriam Sawyer's trunks and boxes remained unpacked, stored in the upstairs bedrooms. Although the Sawyers claimed to have owned a substantial number of additional items in the house, a contention disputed by the estate, they declined to provide a list of those items. The county sheriff informed the bank's attorney that he would not effectuate the eviction without either a list of the Sawyers' property or a court order with regard to their rights.

The order provided that all the boxes and trunks in the upstairs bedrooms belonged to the Sawyers, and that all other tangible property in the house belonged to the estate. In a subsequent order, the same judge (1) acknowledged the Sawyers' claims of ownership to additional items in the house, and (2) directed the Sawyers' attorney to file by January 11, 2016, a counterclaim seeking title to that personal property.

The cross-country move occurred a month after representations were made to the Probate Court and to the Supreme Judicial Court that Miriam Sawyer was frail, essentially homebound, and had "no place else to live."

Were the Sawyers to succeed in this appeal, they would have potential damage claims against the estate for the wrongful handling and disposal of their property. Accordingly, their appeal is not moot. See Galiastro v. Mortgage Electronic Registration Sys., Inc., 467 Mass. 160, 164 (2014).

The request of the bank, pursuant to G. L. c. 211A, § 15, and Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979), for an award of double costs is allowed. Within fourteen days of the issuance of the rescript in this case, the bank should file with the clerk of this court a verified and itemized application for costs. See Fabre v. Walton, 441 Mass. 9, 10 (2004). The Sawyers will be given fourteen days in which to respond.